UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS SMITH, CDCR #AX-8010, <br><br>Plaintiff, <br><br>vs. <br><br>DEPUTY K. BRANGWYNNE; DEPUTY S. CARDA; DEPUTY C. FICKETT; DEPUTY J. HANN; DEPUTY J. KLIEBENSTEIN; DEPUTY A. MENDOZA; SAN DIEGO CENTRAL JAIL, <br><br>Defendants. | Case No.: 3:19-cv-0620-CAB-MSB <br><br>**ORDER:** <br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 4]** <br><br>**AND** <br><br>**2) DISMISSING CLAIMS AND DEFENDANTS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

Plaintiff, Dennis Smith, is currently a state inmate housed at the Substance Abuse Treatment Facility ("SATF") located in Corcoran, California. He has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1) and a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 4). Plaintiff alleges his constitutional rights were violated when he was a pretrial detainee housed at the San Diego Central Jail ("SDCJ").

1

## I. Plaintiff's IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ S. Ct. __, 136 S. Ct. 627, 629 (U.S. 2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2014). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted a certified prison certificate, verified by an accounting officer at SATF, pursuant to 28 U.S.C. § 1915(a)(2) and S.D. CAL. CIVLR 3.2. *See* ECF No. 4 at 4; *Andrews*, 398 F.3d at 1119. This certificate shows that Plaintiff had an available balance of $0.00 at the time of filing. Therefore, the Court will not assess Plaintiff an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Accordingly, the Court grants Plaintiff leave to proceed IFP, declines to "exact" an initial partial filing fee because his prison certificate shows he "has no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Acting Secretary for the CDCR to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

**II.    Sua Sponte Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### A.     42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

### B.     Plaintiff's Factual Allegations

In January of 2018, Plaintiff was housed at the SDCJ. *See* Compl. at 4. On January 9, 2018, Plaintiff "started having problems walking" and "asked Deputy S. Cerda

for a wheelchair." *Id.* Plaintiff provided unnamed deputies his "documentation for [his] medical condition and needs." *Id.* However, Plaintiff alleges Cerda "threw the paper back in [his] face" and stated "don't care, damn I hate these [expletive] p.c.'s."

While these events were taking place, Plaintiff "tried to sit down because of the pain being so severe." *Id.* Deputy Brangwynne placed Plaintiff in handcuffs "while the other Deputies continued calling [Plaintiff] names and degrading [Plaintiff] for not being able to walk without assistance." *Id.* A "gurney was finally brought" even though Plaintiff had "requested a wheelchair." *Id.* Deputies Cerda, Fickett, Hann, Kliebenstein and Mendoza "proceeded to slam [Plaintiff] up and down on the gurney." *Id.* Plaintiff was "cuffed" in an "X" behind his back which caused the handcuffs to "tear [his] skin in 3 places on one hand and 2 places on the other hand." *Id.* Plaintiff recently had "gall bladder surgery" and just "had the staples removed." *Id.* Plaintiff claims he was still "healing from this surgery when this incident took place." *Id.*

When Plaintiff was returned to his cell, "Deputies proceeded to throw [him] off the gurney onto the floor on [his] stomach which was already tender and sensitive from the recent surgery." *Id.* Plaintiff alleges he suffered from "multiple injuries, including neck and shoulder muscle and nerve damage." *Id.*

The following day, Plaintiff was "sent to Tri City Hospital for a CT scan." *Id.* at 5. When Plaintiff returned to SDCJ and had his "vitals checked" which indicated that his blood pressure was high but "nothing was done." *Id.* On June 11, 2018, Plaintiff again was sent to Tri City Hospital for "physical therapy" but was not given any "x-rays" or "MRIs" to "denote the injuries that would warrant physical therapy." *Id.* When Plaintiff was returned to SDCJ he was not brought dinner and "received nothing until breakfast." *Id.* On June 12, 2018, Plaintiff did receive "x-rays" on his "wrist and shoulder" but "they would not x-ray [his] neck." *Id.* Plaintiff filed grievances regarding these incidents but he "still has not gotten the results of [his] x-rays." *Id.*

Plaintiff "continued to be in severe pain and suffering but medical refused" to see him. *Id.* at 6. On January 21, 2018, Plaintiff "filled out yet another sick call slip" but no

medical appointment was set. *Id.* Plaintiff has "continued severe pain in [his] wrist, shoulder, neck, and stomach." *Id.* Plaintiff's medical appointment to see a nurse was "confirmed" on January 24, 2018. *Id.* Plaintiff was examined by a nurse on January 28, 2018 and was told that the nurse would "talk to the doctor about scheduling an MRI but he could not schedule it himself." *Id.* On February 2, 2018, Plaintiff was examined by another nurse who told him that "she would let the doctor know that [Plaintiff] was requesting an MRI." *Id.* Plaintiff inquired about the results of his previous x-rays, but the nurse told hm that "she had no information" and there was "not much that they could do except give [him] Ibuprofen." *Id.* She further stated that Plaintiff "wasn't going to receive [his] surgery or long term care "unless he was going to be there for a long time." *Id.* When he inquired if he "was just going to have to be in severe pain and continue to suffer," he claims the nurse replied "yes, I guess so." *Id.*

On February 11, 2018, Plaintiff "received a response" to his "sick call slip" which informed him that he was scheduled to be examined by a nurse and "that medications were on order." *Id.* Plaintiff continued to fill out "sick call slips" requesting to be seen by a physician. *Id.* On March 19, 2018, an unnamed deputy informed him that "he was going to take [Plaintiff's] wheelchair away" because his "chrono had expired." *Id.*

Plaintiff wrote additional grievances in which he sought to be examined by a physician for his "severe pain and suffering" *Id.* at 7-8. In addition, Plaintiff claims he requires a "special diet" because he "was having trouble eating" due to the "pain in [his] stomach." *Id.* at 8.

On March 23, 2018, Plaintiff was "transferred to George Bailey Detention Facility." *Id.* At this time, he claims that unnamed "sheriffs" took away his "wheelchair and cane and would not give them back." *Id.* Plaintiff was told to "walk from the inside of the jail, through the sally port and out to the vehicle without assistance." *Id.* Plaintiff alleges this caused him "excruciating pain" and he "almost collapsed." *Id.*

///
///

### C. Improper Defendant & Municipal Liability

The Court finds that to the extent Plaintiff names the San Diego Central Jail as a Defendant, his claims as to this Defendant must be dismissed sua sponte pursuant to both 28 U.S.C. § 1915(e)(2) and § 1915A(b) for failing to state a claim upon which § 1983 relief can be granted.

Local law enforcement departments, like the San Diego Sheriff's Department, municipal agencies, or subdivisions of that department or agency, are not proper defendants under § 1983. *See Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.") (citation omitted); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993) ("Section 1983 imposes liability on any 'person' who violates someone's constitutional rights 'under color of law.' Cook County Jail is not a 'person.'").

While the County of San Diego *itself* may be considered a "person" and therefore, a proper defendant under § 1983, *see Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Hammond v. County of Madera*, 859 F.2d 797, 801 (9th Cir. 1988), Plaintiff has not named the County as a Defendant. Moreover, as a municipality, the County *may* be held liable under § 1983–but only where the Plaintiff alleges facts to show that a constitutional deprivation was caused by the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the County, or a "final decision maker" for the County. *Monell*, 436 U.S. at 690; *Board of the County Commissioners v. Brown*, 520 U.S. 397, 402-04 (1997); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). In other words, "respondeat superior and vicarious liability are not cognizable theories of recovery against a municipality." *Miranda v. Clark County, Nevada*, 279 F.3d 1102, 1109-10 (9th Cir. 2002). "Instead, a *Monell* claim exists only where the alleged constitutional deprivation was inflicted in 'execution of a government's policy or custom.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

///

As currently pleaded, Plaintiff fails to state a claim against the County of San Diego because he has failed to allege any facts which "might plausibly suggest" that the County itself violated his constitutional rights. *See Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal*'s pleading standards to *Monell* claims); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (42 U.S.C. § 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of plaintiff's constitutionally protected rights).

Accordingly, the claims against the "San Diego Central Jail" are dismissed for failing to state a claim upon which relief may be granted.

**D.   Medical Care claims**

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). Therefore, "the plaintiff must 'prove more than negligence but less than subjective intent - something akin to reckless disregard.'" *Id.*

Plaintiff must allege facts sufficient to show that:

> (i) [each] defendant made an intentional decision with respect to the conditions under which [he] was confined; (ii) those conditions put [him] at substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [his] injuries.

*Gordon*, 888 F.3d at 1125.

///
///
///
///

Here, Plaintiff may have alleged facts sufficient to state a claim but none of the named Defendants are alleged to have any involvement in his medical care. If Plaintiff chooses to amend his pleading, he must specifically identify the individuals whom he claims are responsible for the alleged failure to provide him with adequate medical attention.

### E. Excessive Force claims

Based on the remaining allegations set forth above , the Court finds Plaintiff's excessive force claims against Defendants Brangwynne, Cerda, Fickett, Hann, Kliebenstein, and Mendoza are sufficient to survive the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012; *Iqbal*, 556 U.S. at 678.

### F. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his excessive force claims against Brangwynne, Cerda, Fickett, Hann, Kliebenstein, and Mendoza only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Brangwynne, Cerda, Fickett, Hann, Kliebenstein, and Mendoza only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint and dismiss the remaining claims and defendants.

## III. Conclusion and Order

Good cause appearing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) is **GRANTED**.

2. The Secretary of the CDCR, or his designee, shall collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments

1 | from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. The Clerk of the Court is directed to serve a copy of this Order on Ralph Diaz, Acting Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

**IT IS FURTHER ORDERED** that:

4. The Court **DISMISSES** Plaintiff's inadequate medical care claims and the claims against Defendant San Diego Central Jail for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

5. The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the claims against Brangwynne, Cerda, Fickett, Hann, Kliebenstein, and Mendoza only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

/ / /
/ / /
/ / /
/ / /
/ / /

6. The Court **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983.

**IT IS SO ORDERED**.

Dated: May 13, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge

11
3:19-cv-0620-CAB-MSB